Robinson
*v.*
Mansfield.

---

## Samuel W. Flagg *versus* John G. Thurston.

Where land conveyed is described in the deed as running a certain distance by measurement to an ascertained line, though without a visible boundary, such line is of itself a monument which will control the admeasurement and fix the extent of the land conveyed.

Upon a petition for partition it appeared, that a part of a lot of land belonging to the estate of an intestate, was set off by metes and bounds to his widow for her dower, by commissioners appointed by the probate court. The commissioners made no return of their doings, but the widow accepted and entered upon the land thus assigned to her. The administrator of the intestate sold the reversion of the dower land, and the grantee conveyed the same to the respondent, one of the heirs, who had continued to be seised as tenant in common with the other heirs, in the rest of the lot, and to whom the widow conveyed her right in the dower land. The respondent fenced the dower land in the presence of F, another heir, declaring that he claimed exclusive right and title to the same. F never attempted to disturb his possession, but the petitioner, the son of F, made several attempts to enter upon and occupy the land, which however were repelled, and the respondent maintained his possession and was in actual possession when F conveyed all his right to the petitioner. It was *held*, that whether the assignment of dower was valid or not, F was disseised, and so nothing passed by his deed to the petitioner.

PETITION for partition. The petitioner prays that his share of a tract of land in Lancaster, called the Poor lot, containing four acres, may be set off to him in severalty. He claims five undivided eighth parts of 96 rods, part of the tract, and one undivided eighth part of the residue.

The respondent resists the partition as to 2 acres and 30 rods, which part includes the 96 rods.

The tract, which once belonged to Edward Poor, was conveyed to Peter Thurston in 1788. Dorothy Thurston, the wife of Peter, owned a farm containing about 60 acres, adjoining the Poor lot. In 1791, Peter and Dorothy conveyed to their son Gates Thurston an undivided moiety of the farm and of the Poor lot. Peter died in 1812, intestate, owning at the time of his decease an undivided moiety of the Poor lot. He left four children, two of whom were Gates Thurston and Dolly Flagg, wife of Josiah Flagg. On November 15, 1813, Dorothy Thurston released and quitclaimed to Gates Thurston the remaining undivided moiety of the farm of 60 acres.

Gates Thurston, by his deed of November 25, 1813, conveyed the farm in mortgage to the New-England bank, describing it by metes and bounds. In the description are the following expressions ; — " thence south $61\frac{1}{2}°$ east 7 rods and $8\frac{1}{3}$ links to the factory road, thence on said road 14 rods and 5 links to land of the heirs of Peter Thurston, thence north $76\frac{1}{2}°$ west to a stake and stones." The point of intersection with " the factory road," was agreed on by the parties, and the distance from thence to the Poor lot, which was the land of the heirs of Peter Thurston, is 8 rods and 5 links. By going 6 rods further upon that lot, according to the length of line given in the deed to the New-England bank, the abovementioned 96 rods will be included in the conveyance to the bank. The bank assigned their mortgage to S. V. S Wilder, by deed dated December 26, 1816. Gates Thurston was in possession of both the tracts from and after the death of Peter Thurston until his own death in February 1816. The respondent was appointed administrator on the estate of Gates Thurston, and in that capacity he conveyed, by deed dated February 27, 1819, to one Gardner, the right in equity to redeem the land mortgaged to the bank. In this deed the line on the factory road is described as 8 rods and 5 links. Gardner conveyed the same right in equity to S. V. S. Wilder, describing that line in the same manner. Wilder quitclaimed all his right in the mortgaged premises, to the petitioner, by deed dated November 26, 1828. In this deed the same line is called 8

rods and 5 links. On the 15th of December following, Wilder made another quitclaim deed, purporting to be explanatory of the former, in which the line is described as 14 rods and 5 links.

Josiah Flagg and Dolly Flagg, his wife, executed and delivered to the petitioner a deed, dated July 4, 1829, of all their right and title in and to the Poor lot.

In November 1819, commissioners were appointed by the judge of probate to assign dower to Betsey Thurston, the widow of Gates, and they proceeded so far in the execution of their duty as to set off her dower in several tracts of land, and among other parcels set off to her from and of the Poor lot, 2 acres and 30 rods, including the 96 rods above mentioned. The commissioners never made any return of their doings, but the lands set out to the widow as her dower were shown to her by the commissioners, and she afterwards accepted the same, and entered thereupon and continued to occupy the same until she made a conveyance of all her interest in the 2 acres and 30 rods, to the respondent, in March 1829.

In February 1819, the respondent, as administrator of Gates Thurston, sold the right in reversion to the 2 acres and 30 rods, to E. Wilder; and on the 2d of March following, Wilder conveyed the same right in reversion to the respondent. After the decease of Gates Thurston the respondent occupied the farm and the Poor lot, under his mother, Betsey Thurston, until the farm was conveyed by S. V. S. Wilder to the petitioner. The petitioner removed to the farm on March 31, 1829, and has occupied it ever since.

In April 1829, as soon as the frost was out of the ground, the respondent erected a fence on the line between the farm and the 2 acres and 30 rods of the Poor lot, both tracts of land having been cultivated in common and without any separation by a fence, while occupied as before mentioned by the respondent. Josiah Flagg was present at the time when this fence was erected, and was informed that the respondent claimed exclusive right and title to the 2 acres and 30 rods. None of the heirs of Peter Thurston had before that time set up any claim to this land.

There was a barn standing on the 2 acres and 30 rods. After the petitioner removed to the farm he attempted to make use of this barn. The respondent caused the doors to be nailed up two or three times, but they were as often broken open. Josiah Flagg, a witness called by the petitioner, testified that in the fall of 1828, the petitioner carried eight or ten loads of manure into the barn yard on the 96 rods, that he put into the barn shed a horse-wagon, winnowing mill and some other articles ; and that he leased a part of the barn to one Bowman, who put a quantity of hay therein and kept his horse and cow there some part of the winter.

The fence erected by the respondent was partially broken down by the petitioner, soon after its erection, but it was immediately restored by the respondent. During the absence of the latter on a journey in June 1829, the petitioner entered upon the 2 acres and 30 rods, and cut and carried away the grass growing there. On the return of the respondent in the same month, he caused the fence, which had again been partially taken down when the grass was removed, to be rebuilt.

The respondent contended, that the mortgage to the New England bank did not, by the true construction of the deed, include the 96 rods, because the land of the heirs of Peter Thurston, being a known and permanent monument, ought to govern and correct the length of line.

The petitioner contended, that the monument next mentioned in the deed, viz. "a stake and stones," corresponded with the courses and distances there stated, and that this monument, together with those courses and distances, plainly manifested an intention on the part of the grantor to include in the mortgage a part of the Poor lot.

To prove the existence of this monument the petitioner called Josiah Flagg ; who testified, that soon after the conveyance to the New-England bank, he was on the Poor lot, and there saw a stake set up, which appeared to be a surveyor's stake, near to what is alleged to be the corner of the 96 rods, but that there were then no stones about the stake, and that he never saw it afterwards.

The judge before whom the cause was tried. ruled that the mortgage did not include the 96 rods.

The respondent contended, that the deed of Josiah Flagg and his wife was inoperative, by reason of the adverse possession of the respondent, both the grantors and grantee knowing of such adverse possession and that it was under a claim of exclusive right and title.

Judgment was to be rendered by the whole Court, according to their determination of the law on the several questions made upon the foregoing facts.

*Hoar* and *Dustin*, for the petitioner, cited in regard to the construction of the deed to the New-England bank, *Davis* v. *Rainsford*, 17 Mass. R. 207 ; *M'Ivers* v. *Walker*, 9 Cranch, 178 ; *Jackson* v. *Camp*, 1 Cowen, 605 ; *Jackson* v. *Frost*, 5 Cowen, 346 ; *Doe* v. *Thompson*, ibid. 371 ; *Roberts* v. *Ives*, 9 Cowen, 661. — To the point, that the assignment of dower to the widow of Gates Thurston was invalid, and consequently her deed to the respondent was inoperative, Jackson on Real Actions, 327, 328. — That the respondent had not such exclusive seisin as to bar a petition for partition, *Varnum* v. *Abbot*, 12 Mass. R. 474 ; *Baldwin* v. *Whiting*, 13 Mass. R. 57 ; *Barnard* v. *Pope*, 14 Mass. R. 434 ; *Porter* v. *Hill*, 9 Mass. R. 34. — And that Josiah Flagg and wife were not disseised, and so their deed transferred their right to the petitioner, Co. Lit. 199 *b*, 243 *b*, 373 *b* ; 2 Salk. 423, note.

*Merrick*, *Smith* and *Lee* for the respondent. Gates Thurston being tenant in common of the Poor lot at the time when he executed the mortgage to the bank, his conveyance of a specific portion of the lot to a stranger, to the prejudice of his co-tenant, was void. *Porter* v. *Hill*, 9 Mass. R. 34 ; *Bartlett* v. *Harlow*, 12 Mass. R. 348 ; *Baldwin* v. *Whiting*, 13 Mass. R. 57 ; *Rising* v. *Stannard*, 17 Mass. R. 282 ; *Varnum* v. *Abbot*, 12 Mass. R. 474.

The respondent had exclusive seisin of the 2 acres and 30 rods, and this process cannot be maintained until the petitioner has recovered seisin by writ of entry. *Bonner* v. *Kennebeck Proprietors*, 7 Mass. R. 475 ; *Barnard* v. *Pope*, 14 Mass. R. 434 ; *Liscomb* v. *Root*, 8 Pick. 376.

The line of the Poor lot is a monument, which controls the distance of 14 rods and 5 links, mentioned in the deeds. *Davis*

Flagg
v.
Thurston.

v. *Rainsford*, 17 Mass. R. 207 ; *Makepeace* v. *Bancroft*, 12 Mass. R. 469.

To the point that the deed of Josiah Flagg and wife to the petitioner was inoperative, they cited *Higbee* v. *Rice*, 5 Mass R. 344 ; *Gordon* v. *Pearson*, 1 Mass. R. 323 ; *Proprietors of No. Six* v. *M'Farland*, 12 Mass. R. 325 ; *Brinley* v. *Whiting*, 5 Pick. 348 ; *Cleverly* v. *Whitney*, 7 Pick. 36.

*Oct. 6th.*     WILDE J. delivered the opinion of the Court. Two questions have been argued on the case reported.

1. The first is whether the petitioner, under the deed from Gates Thurston to the New-England bank, has acquired any title to the Poor lot, which at the time of that conveyance belonged to the heirs of Peter Thurston.

2. Whether any good title passed to the petitioner by his deed from Josiah Flagg and wife, of the 4th of July 1829.

As to the first question, it is manifest that Gates Thurston had no intention to convey to the New-England bank any part of the Poor lot, although he at the time was seised of an undivided moiety of that lot, as well as of the whole of an adjoining farm, which he held under a title derived from Dorothy Thurston, the wife of Peter, the former owner. In the description of the premises conveyed to the bank, the lines which relate to the present question are thus described. " Thence south $61\frac{1}{2}°$ east 7 rods and $8\frac{1}{3}$ links to the factory road, thence on said road 14 rods and 5 links to land of the heirs of Peter Thurston, thence north $76\frac{1}{2}°$ west to a stake and stones." The point of intersection with the factory road is agreed by the parties, and it is also agreed that from thence to the Poor lot, which was then the land of the heirs of Peter Thurston, the distance is but 8 rods and 5 links. But the line is to run no further than to the land of the heirs of Peter Thurston, and the line of their lot, being fixed, is a boundary, which controls and limits the length of line ; according to the well established rule of construction in cases where the courses and distances do not correspond with the boundaries mentioned in the deed. If it could be proved that a stake and stones, or any other monument, had been placed by the parties at the termination of the 14 rods 5 links, some doubt perhaps might be excited as to the

intention of the parties, but by the rules of construction it would not be sufficient to maintain the petitioner's claim, because no such monument is mentioned in the deed. There is, however, no such proof. It was attempted to be proved on the trial, but the proof was altogether insufficient. One witness testified, that soon after the conveyance to the New-England bank he saw a stake near to the place to which the petitioner claims, but for what purpose it was placed there, and by whom, did not appear.

We think it, therefore, very clear, that the petitioner cannot maintain his claim to any part of the Poor lot, under his title derived from the New-England bank.

The second question depends on another question, viz. whether Josiah Flagg and his wife were ousted or disseised at the time of their conveyance to the petitioner; for it is very clear that if they were, nothing passed by their deed. It was incumbent on the respondent to establish this fact by unquestionable evidence, for the intention of the parties is not to be defeated by doubtful facts.

What then are the facts reported? In 1819 2 acres and 30 rods, including the 96 rods in question, part of the Poor lot, were set off to Betsey Thurston, the widow of Gates Thurston. The commissioners appointed to assign her dower made no return of their doings into the probate court. But whether or not the assignment was defective and void for that omission, is not the question. The widow accepted the dower thus assigned, entered on the land, and continued to occupy it until March 1829, when she made a conveyance thereof to the respondent. In the month of April next after this conveyance, the respondent erected a fence between the farm and the 2 acres and 30 rods, and Josiah Flagg was present when it was erected, and was informed that the respondent claimed exclusive right and title to the 2 acres and 30 rods. Josiah Flagg never after attempted to disturb the respondent's possession, although the petitioner, before he obtained the conveyance from Flagg, did make several attempts to enter upon and occupy the 2 acres and 30 rods; but these attempts were repelled by the respondent, who continued to maintain his possession, and was in actual

Flagg<br>v.<br>Thurston.

Flagg
*v.*
Thurston.

possession, in July 1829, when the deed from Flagg and wife to the petitioner was made.

These are the facts reported, and they are not questioned, but are submitted to the consideration of the Court as facts proved.

Now, that these facts show an ouster of Flagg and wife before and at the time of their conveyance to the petitioner, is too plain to admit of argument, and cannot be made plainer by any reference to authorities. If these facts do not amount to an ouster, it is not easy to imagine a case that would. It is not necessary, therefore, to consider the other objection to the validity of the deed from Flagg and wife to the petitioner ; as the grantors were ousted when they made their deed, the respondent having the exclusive possession, with the knowledge of both parties to the deed, it is clear that nothing passed by that instrument.

By the agreement of the parties, judgment is to be entered according to the decision of the Court upon these questions.